IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:11-cv-581 |
| JOSE AREL ACUNA, et al., | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

Before the Court in this insurance coverage dispute is a motion for summary judgment filed by plaintiff, Sentry Select Insurance Company ("Sentry"), with respect to its duty to defend defendant Jose Arel Acuna ("Acuna") in an underlying state court wrongful death action (the "state court action").[1] That pending case is based on an incident that occurred on May 2, 2010, when a vehicle owned by Cowles Nissan, Inc. ("Cowles Nissan") and driven by Acuna struck and killed a pedestrian, Carlos Luis Medina Campoverde ("Medina"). Acuna was arrested shortly after the incident and charged with driving while intoxicated, a charge on which he was convicted on January 2, 2011. On or about February 24, 2011, defendant Germaine Sobral, as Personal Representative of the Estate of Medina ("Sobral"), filed the state court action against Acuna and Cowles Nissan in Prince William County Circuit Court. *See* Ex. 2 to Def. Germaine Sobral's Opp. to Pl.'s Mot. for Summ. J. (Doc. No. 30).

---

[1] The state court action is styled *Germaine Sobral, Esq., as personal representative of the estate of Carlos Luis Medina Campoverde, deceased v. Cowles Nissan, Inc. and Jose Ariel Acuna*, Civil No. CL11001188-00, filed February 24, 2011 in the Circuit Court for Prince William County, Virginia. The Court notes that defendant Acuna is identified in this action as Jose Arel Acuna and as Jose Ariel Acuna in the state court action.

1

At the time of the incident, Cowles Nissan was insured under a Commercial Garage Policy (the "policy") issued by Sentry. Sentry agreed to defend Acuna, but advised Acuna that its defense was "subject to a reservation of rights . . . owing to Sentry's concerns with respect to whether [Acuna is] in fact an 'insured' under [the] policy as well as the potential application of Exclusion 1 [to the policy]." *See* Ex. B to Pl.'s Statement of Material Facts As To Which There Is No Genuine Issue ("Statement of Facts") (Doc. No. 28), at 2. On May 27, 2011, Sentry filed the complaint in this action, "seek[ing] a declaration that it does not owe coverage for the wrongful death suit that the Estate of Medina has filed against Acuna." *See* Compl. at ¶ 7.

There is no dispute that the vehicle Acuna was driving when he struck Medina was owned by Cowles Nissan; nor is there any dispute that Sobral has alleged in the state court action that Acuna was driving that vehicle with the express or implied consent of Cowles Nissan. The Court therefore concludes as a matter of law that Sentry has a duty to defend Acuna under the policy in the state court action. Specifically, the Court finds that for the purpose of determining whether Sentry has a duty to defend Acuna in the state court action, he is an "insured" since at the time of the incident he was alleged to be driving with the express or implied permission of Cowles Nissan. In addition, based on those allegations in the state court action, there is coverage under the policy's "garage operations" provision, since that provision provides coverage with respect to any "covered auto," which, under the policy's liability coverage, includes any auto owned by Cowles Nissan. Finally, the Court concludes that Exclusion 1, pertaining to bodily injury or property damage "expected or intended from the standpoint of the 'insured[,]'" does not exclude coverage, as a matter of law, based on the allegations of the state court action. As discussed in more detail below, the Court will therefore deny Sentry's motion for summary judgment, and also enter summary judgment for defendants Sobral and Acuna, with respect to

2

Sentry's duty to defend Acuna in the state court action. Finally, because Sentry's request for a declaration as to its duty to indemnify Acuna cannot be decided until after a complete and final adjudication of Sobral's claims in the state court action, the Court concludes that this remaining request for relief is premature and that there is no justiciable controversy presently before the Court. The Court will therefore dismiss without prejudice Sentry's request for a declaration as to its duty under the policy to indemnify Acuna from any liability arising out of the state court action.

## BACKGROUND

### A. <u>The Applicable Provisions of the Policy</u>

Sentry and Cowles Ford Inc. entered into an insurance contract with respect to five entities including Cowles Nissan, Commercial Garage Policy, No. 24-08561-03, effective 7/1/09-7/1/10 ("the policy"). Compl., at Ex. 2. The policy provides:

> We will pay all sums an "insured" legally must pay as damages, including punitive damages where insurable by law, because of bodily injury or property damage to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."

*Id.* at 62. An "insured" is defined as follows:

> The following are "insureds" for covered "autos":
> (1) You [Cowles Nissan] for any covered "auto."
> (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow . . . .

*Id.* at 63. The policy defines "Garage operations" as follows:

> "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section 1 of this coverage form as covered "autos." "Garage operations" also includes all operations necessary or incidental to a garage business.

3

*Id.* at 93. Pursuant to Exclusion 1 of the policy, the policy does not apply to "'bodily injury' or 'property damages' expected or intended from the standpoint of the 'insured.'" *Id.* at 65. Finally, for the purposes of liability insurance, all autos are considered "covered" autos. *Id.* at 21, 59.

### B. The State Court Complaint

The complaint filed in the state court action (the "state court complaint") alleges three claims of wrongful death based on negligence, negligent entrustment, and respondeat superior. The state court complaint also alleges that when he struck and killed Medina, Acuna was employed by Cowles Nissan, driving a vehicle owned by Cowles Nissan, with the express or implied permission of Cowles Nissan, and "acting within the scope of his employment at Cowles Nissan," which "explicitly or implicitly authorized Mr. Acuna to use the [owned vehicle] as part of his employment." *See* Ex. 1 to Compl. at ¶¶ 5, 8-9, 22-23, 27-28. Acuna was intoxicated at the time of the accident, and was subsequently charged with, *inter alia*, involuntary manslaughter, driving while intoxicated (3rd offense within 5-10 years), and hit and run, and convicted of all charges other than involuntary manslaughter. *Id.* at ¶¶ 13-14, 17-19. The state court complaint seeks damages in the form of funeral expenses; damages to compensate Medina's daughter for deprivation of services, financial support, society, companionship, comfort, protection, parental care, attention, advice, counsel, training, guidance, and education; punitive damages from Acuna for wanton conduct and reckless disregard for safety; and punitive damages from Cowles Nissan for willful and wanton disregard for safety; totaling $9 million plus costs.

C. <u>**Plaintiff's Motion for Summary Judgment**</u>

Sentry filed this action for declaratory relief against Acuna and Sobral to determine whether under the policy, Sentry has a duty to defend and indemnify Acuna in the state court action. In its motion for summary judgment, Sentry argues that it does not have a duty to defend Acuna because Acuna's use of the vehicle does not qualify as "garage operations" and also that, given Acuna's alleged condition at the time of the incident, Medina's death was "expected or intended from the standpoint" of Acuna, and therefore coverage is excluded for the incident under Exclusion 1. In her opposition, Sobral argues, *inter alia*, that the "garage operations" provision of the policy applies to any "covered auto," regardless of the nature of the use[2]; that under the Virginia Omnibus Statute, the policy must provide coverage for Acuna's use of the vehicle so long as such use was with express or implied permission (and that Sobral adequately plead such permission in the state court complaint); and that factual issues must be resolved in the state court action before the application of that exclusion can be determined, and therefore Sentry's duty to defend cannot be eliminated because of that exclusion.

## STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*,

---

[2] Sobral additionally argues that that Acuna's use of the vehicle was also covered under the garage operations provision since it was "incidental to" garage operations because Acuna was considering purchasing the vehicle. Given the Court's conclusion that Acuna's use was covered under that part of the garage operations provision pertaining to vehicles owned by Cowles Nissan, the Court does not rule on this contention.

477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## ANALYSIS

Under Virginia law, an insurer's duty to defend arises "whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Penn-American Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990)). *See also Brenner*, 240 Va. at 189 (holding that there is no duty to defend "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations"). The scope of the duty to defend is thus analyzed under what is referred to as the "eight corners" test: in other words, the question is answered by examining the four corners of the complaint and the four corners of

6

the insurance policy. *See Zurich Am. Ins. Co. v. Pub. Storage*, 697 F. Supp. 2d 640, 645 (E.D. Va. 2010).

"Under the Exclusive Pleading Rule, 'an insurer's duty to defend is determined solely by the allegations in the pleading.'" *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465 (E.D. Va. 2002) (quoting *Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 102 (E.D. Va. 1989)). "The Potentiality Rule extends the Exclusive Pleading Rule to require the insurer to defend if there is the potential that the 'claim, as stated in the pleadings, could be covered by the policy.'" *Id.* The Fourth Circuit has explained that the duty to defend is triggered when the underlying complaint alleges liability that "potentially or arguably" is covered by the policy. *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 767 (4th Cir. 1978).

A court need not "make independent findings as to what actually occurred," but need only "decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion[s]." *Penn-America*, 368 F.3d at 413. "Although an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage." *Id.* (emphasis in original).

The primary coverage dispute between Sentry and the defendants revolves around the scope of the "garage operations" provision. As cited *supra*, under the policy, Sentry agrees to "pay all sums an 'insured' legally must pay as damages, including punitive damages where insurable by law, because of bodily injury or property damage to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" Ex. 2 to Compl., at 62. Under the policy, the "garage operations" provision extends to three categories of coverage: (1) "the ownership, maintenance

7

or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations"; (2) "the ownership, maintenance or use of the 'autos' indicated in Section 1 of [the policy] as covered 'autos'"; and (3) "all operations necessary or incidental to a garage business." *Id.* at 93. Under the policy's liability insurance coverage, all autos owned, leased, hired, rented or borrowed by Cowles Nissan are considered to be "covered" autos. *Id.* at 21, 59.

Sentry argues that to qualify for coverage under the "garage operations" provision, Acuna's use of the vehicle at the time of the accident must have been "necessary or incidental to a garage business," *see* Pl.'s Mem. at 9, and based on that premise, disputes that Acuna's use of the vehicle – which Sentry contends can only be characterized as "personal," *see id.* at 7-9 – was "in connection with" or "arose out of" Cowles garage business. Accordingly, Sentry argues, Sobral's claims, based on Medina's loss, are outside the scope of the policy. *Id.* at 9.

Because the interpretation of the policy is governed by Virginia law and no Virginia Court has definitively ruled on this issue, the Court must predict how the Virginia Supreme Court would decide the issue, were it presented to it. In making that determination, the Court must interpret and apply the language of an insurance contract according to settled principles of Virginia law regarding interpretation of insurance policies. *See Seals v. Erie Ins. Exch.*, 674 S.E.2d 860, 862 (Va. 2009); *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 532 S.E.2d 325 (Va. 2000). Under those settled principles, Virginia law applies to insurance contracts the general rules that govern contract interpretation and construction, aided by other principles of construction particular to insurance contracts. In that connection, when interpreting an insurance policy, a court's ultimate purpose, as with contracts generally, is to give effect to the mutual intent of the parties to the contract. *Seals*, 674 S.E.2d at 862. A court determines the parties' intent by reference to their objective manifestations of that intent, as expressed in the language of

8

the policy, *id.* at 860, and determines the meaning of policy language by considering the policy as a whole, *id.* at 862. For that reason, the Court must not "examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Res. Bankshares Corp. v. St. Paul*, 407 F.3d 631, 636 (4th Cir. 2005) (applying Virginia law).

Virginia law also follows the rule of *contra proferentem*, applicable specifically to insurance contracts. Under that principle, "insurance policies are to be liberally construed in favor of the assured and exceptions and exclusions are to be strictly construed against the insurer." *United Serv. Auto. Ass'n v. Pinkard*, 356 F.2d 35, 37 (4th Cir. 1966) (quoting *Ayres v. Harleysville Mut. Cas. Co.*, 172 Va. 383, 389 (1939)). *See also Jefferson-Pilot Fire & Cas. Co. v. Boothe, Prichard & Dudley*, 638 F.2d 670, 674 (4th Cir. 1980) ("[W]here two interpretations equally fair may be made, the one which permits a greater indemnity will prevail."). Language that purports to exclude specific events from coverage is "construed *most strongly* against the insurer." *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co., Inc.*, 227 Va. 407, 411 (1984) (emphasis added); *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 81 (2009) ("Because insurance policies usually are drafted by insurers, we construe ambiguous policy language purporting to exclude certain occurrences from coverage most strongly against the insurer.").[3]

---

[3] While Virginia courts have not yet interpreted this precise "garage operations" provision in any analogous scenario as that presented here, courts in other states have. Nonetheless – and as might be expected in an area such as insurance law that is heavily state-specific – no uniform construction of identically worded policies has emerged. Both parties cite numerous cases from other jurisdictions in support of their position. Some courts (cited by Sentry) read into the second category of coverage a limitation that confines its application to garage business uses. *See Dumblewski v. ITT Hartford Ins. Grp.*, 623 N.Y.S.2d 374 (N.Y. App. Div. 1995); *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir. 1985) (applying South Carolina law); *Lonergan v. Nationwide Mut. Ins. Co.*, 663 A.2d 480 (Del. Super. Ct. 1995); *Renda v. Brown*, 563 So.2d 328 (La. Ct. App. 1990); *Lambert v. Nw. Nat'l Ins. Co.*, 769 P.2d

9

The Court concludes that, were this issue presented to it, the Virginia Supreme Court would conclude that Sentry has a duty to defend Acuna based on the second category of coverage under the "garage operations" provision. Within that category of coverage, there are no limitations on the types of "use" for which coverage would apply; the only limitation of any kind pertains to which vehicles whose use would be covered, and those vehicles are limited to "covered 'autos.'" Ex. 2 to Compl., at 93. Sentry's position, however, is based on an overly restrictive reading of the applicable policy, not required by the objective and natural meaning of the language used, and necessarily reads into the policy certain limitations nowhere found in the policy. Thus, contrary to Sentry's argument, the plain language of the policy itself makes apparent that coverage under this second category is not limited to vehicles whose use related to the garage business. This reading of the policy is supported by the language of the first and third categories of coverage under the "garage operations" provision, which specifically ties coverage to the garage business – the first category applies to "the ownership, maintenance or use of locations *for garage business*" and the second to "operations *necessary or incidental to a garage business*," *id.* – whereas this second category contains no such language restricting its coverage to garage business uses.

Second, to the extent that the second category under the garage operations provision is

---

1152 (Idaho Ct. App. 1989); *Cont'l Ins. Co. v. Colston*, 463 S.W.2d 461 (Tex. App. 1971) (all cited in Pl.'s Mem. at 7-9). Other courts (cited by Sobral), find "it seems clear . . . that the second coverage deals generally with the ownership, maintenance, and use of the covered vehicles and is not narrowly confined to garage business uses." *See Burr v. Nationwide Mut. Ins. Co.*, 359 S.E.2d 626 (W.Va. 1987) (cited in Def.'s Opp. at 6-8). *See also Spangle v. Farmers Ins. Exch.*, 166 Cal. Rptr. 3d 763 (Cal. Ct. App. 2008); *Farmers Alliance Mut. Ins. Co. v. Ho*, 68 P.3d 546, 550 (Colo. App. 2002); *Arnold v. Beacon Ins. Co. of Am.*, 687 So.2d 843 (Fla. Dist. Ct. App. 1996); *Guillory v. Morein*, 468 So.2d 1254 (La. Ct. App. 1985) (all cited in Def.'s Opp. at 6-8).

ambiguous, the policy must be construed liberally under Virginia law, with restrictions or exclusions construed strictly and narrowly, in order to maximize coverage.

Finally, Sentry's position concerning the second category of coverage within the garage operations provision, if accepted, would effectively constrict the scope of coverage required under Virginia's omnibus-clause statute, Va. Code § 38.2-2204. That statute requires that an automobile insurance policy provide coverage for "any . . . person using . . . the [insured] vehicle . . . with the expressed or implied consent of the named insured." Va. Code § 38.2-2204(a). Virginia courts have recognized that the omnibus-clause statute "is a remedial statute enacted to serve the public policy of broadening the coverage of automobile liability insurance for the protection of injured persons." *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 547 (2011); *see also State Farm Mut. Auto. Ins. Co. v. Geico Indem. Co.*, 241 Va. 326, 330 (1991) (quoting *Fidelity & Cas. Co. v. Harlow*, 191 Va. 64, 68-69 (1950) ("[W]e have repeatedly held that the omnibus clause 'is remedial and must be liberally interpreted to subserve the clear public policy reflected in it, which is to broaden the coverage of automobile liability policies. In defining "implied permission" . . . this court has been liberal in its interpretation and application, and has gone far in holding insurance carriers liable.'").[4] *See also GuideOne Mut. Ins. Co. v. Murray*, 81 Va. Cir. 157, 2010 7765594, at *3 (Va. Cir. Ct. 2010) (citing Va. Code § 38.2-2204(E)) ("Any endorsement in an insurance policy that seeks to limit or exclude coverage required under the omnibus statute is void.").

---

[4] Under Virginia law, the party seeking to bring himself within the omnibus clause coverage of a given policy bears the burden of proof. *Earth Tech, Inc. v. U.S. Fire Ins. Co.*, 407 F. Supp. 2d 763, 768-69 (E.D. Va. 2006) (citing *Hartford Fire Ins. Co. v. Davis*, 246 Va. 495, 498 (1993)). *See also State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 43 Va. Cir. 419, 1997 WL 1070431 (Va. Cir. Ct. 1997) (citing *Hartford Accident & Indem. Co. v. Peach*, 193 Va. 260, 266 (1952)). However, "this burden is not especially onerous," *Res. Bankshares Corp.*, 407 F.3d at 636.

Sentry finally contends that there is no duty to defend Acuna because coverage is excluded under Exclusion 1, which states that the policy does not apply to "'bodily injury' or 'property damages' expected or intended from the standpoint of the 'insured.'" Ex. 2 to Compl., at 6. In that regard, Sentry contends that because Acuna "had been drinking for much of the evening and was severely intoxicated at the time of his arrest, his erratic driving and subsequent accident were clearly not unexpected" and therefore do not fall within the policy's coverage pursuant to Exclusion 1. Pl.'s Mem. at 10. The Court rejects Sentry's position that its otherwise applicable duty to defend Acuna is eliminated because of Exclusion 1. Determining whether Exclusion 1 eliminates coverage under the policy for Sobral's claims involves mixed issues of fact and law that cannot be decided until the state court action has run its course. *See* 7 Am. Jur. 2D Automobile Insurance § 158 (quoted in *Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co.*, 60 Va. Cir. 418, 2002 WL 32075410, at *6 (Va. Cir. Ct. 2002)) ("Whether a particular intentional act is excluded from coverage . . . depends upon the subjective intent of the insured, which is ordinarily a question of fact[.]"); *see also Burr*, 359 S.E.2d at 632 (citing Va. Code § 38.2-2204(E)) (observing that such an exclusion fails under Virginia law because the Virginia omnibus-clause statute "does not permit any exclusions to omnibus coverage."). The Court cannot therefore conclude as a matter of law, based on the allegations of the state court complaint, that Sobral's claims are excluded from coverage under the policy and that there is consequently no duty defend Acuna.

Because the state court complaint adequately alleges facts that make Acuna's use of the vehicle covered under the policy and does not establish that any policy exclusions from coverage must apply, Sentry has a duty to defend Acuna in the underlying state court action. Sentry's motion for summary judgment will therefore be denied. Although the defendants have not filed

a counterclaim for a declaration in its favor or otherwise asked for affirmative relief, the Court, *sua sponte*, will declare as a matter of law that that Sentry has a duty to defend Acuna in the state court action and will enter judgment in defendants' favor for that relief. *See Builders Mut. Ins. Co. v. Parallel Design & Dev. Co.*, 785 F. Supp. 2d 535, 552 & n.9 (E.D. Va. 2011) (quoting *United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)) ("While Fed. R. Civ. P. 56 does not expressly provide that district courts may enter summary judgments sua sponte, there can be little doubt that district courts inherently possess that power."). In addition, the Court concludes that it cannot decide whether Sentry has a duty to *indemnify* Acuna for the incident at issue here until the final adjudication of the state court action, as an insurer's duty to defend and its duty to indemnify "are separate responsibilities and the scope of coverage is different for each." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 426 (E.D.Va.2000). For that reason, the Court concludes that there is no justiciable controversy before the Court, ripe for adjudication, with respect to Sentry's duty to indemnify. Sentry's request for a declaration that is has no duty to indemnify will therefore be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Summary Judgment is denied and summary judgment is entered for defendants.

The Court will issue an appropriate Order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 15, 2011